SCJ/GG:BDF/FTB/ABS
F. #2015R00794

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

    - against -

ANNA NEKHANEVICH,
        also known as "Anna Silver,"
        and "Anna Serebryany,"

                Defendant.

– – – – – – – – – – – – – – – X

**I N F O R M A T I O N**

Cr. No.<u>15-326</u>
(T. 18, U.S.C., §§ 2, 982(a)(1), 982(a)(7),
  1347, 1956(a)(1)(B)(i) and 3551 <u>et</u> <u>seq.</u>;
  T. 21, U.S.C., § 853(p); T. 26, U.S.C. §
  7206(1))

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

      At all times relevant to this Information, unless otherwise indicated:

I.    <u>Background</u>

    A.    <u>The Medicare and Medicaid Programs</u>

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were at least 65 years old or disabled. Medicare was administered by the Centers for Medicare & Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as "beneficiaries."

        2.    Medicare included coverage under two primary components, hospital insurance ("Medicare Part A") and medical insurance ("Medicare Part B"). Medicare Part B

1

covered the costs of physicians' services and outpatient care, including physical therapy,
occupational therapy and diagnostic tests.  Generally, Medicare Part B covered these costs
only if, among other requirements, they were medically necessary, actually rendered, ordered
by a physician and not induced by the payment of remuneration.

3.      The New York State Medicaid Program ("Medicaid") was a federal and
state health care program providing benefits to individuals and families who met financial
and other eligibility requirements.  CMS was responsible for overseeing the Medicaid
program in participating states, including New York.  Individuals who received benefits
under Medicaid were also referred to as "beneficiaries."

4.      Medicaid covered the costs of medical services and products ranging
from routine preventive medical care for children to institutional care for the elderly and
disabled.  Among the specific medical services covered by Medicaid were physical and
occupational therapy.  Generally, Medicaid covered these costs if, among other requirements,
they were medically necessary and ordered by a physician.

5.      Medicare and Medicaid were each a "health care benefit program," as
defined by Title 18, United States Code, Section 24(b).

6.      Medical providers submitted a Medicare Enrollment Application
("Medicare Application") to Medicare to participate in Medicare and submit claims for
reimbursement.  The Medicare Application required a provider to supply Medicare with
information, such as insurance forms, Internal Revenue Service forms and corporate
documents.  In order to receive funds electronically from the Medicare program, providers
also submitted Electronic Funds Transfer Authorization Agreements, which listed bank
accounts in which Medicare would deposit reimbursements.

2

7.  Medical providers certified to participate in Medicare and Medicaid, whether clinics or individuals, were assigned by each program a provider identification number ("PIN") or provider transaction access number ("PTAN") for billing purposes. After a medical provider rendered a service, the provider was required to use its assigned PIN/PTAN when submitting a claim for reimbursement to Medicare or Medicaid.

8.  Medical providers were authorized to submit claims to Medicare and Medicaid only for services they actually rendered and were required to maintain patient records verifying the provision of services. By submitting a claim to either Medicare or Medicaid, the provider certified, among other things, that the services were rendered to the patient by the provider and were medically necessary.

9.  Providers submitted to Medicare and Medicaid claims using billing codes, also called current procedural terminology ("CPT") codes, which were numbers referring to specific descriptions of the medical services provided to beneficiaries.

B.  The Defendant and Relevant Entities

10.  Total Rehab and Physical Therapy PC ("Total Rehab") was a New York State corporation that operated at 2333 65th Street, Brooklyn, New York, 11203.

11.  Evercare Occupational Therapy LLC ("Evercare") was a New York state corporation that operated at 2100 Flatbush Avenue, Brooklyn, New York, 11234.

12.  Mission Rehab PT PC ("Mission Rehab") was a New York state corporation that operated at 2792 Ocean Avenue, Brooklyn, New York, 11229 and 1200 Gravesend Neck Road, Brooklyn, New York, 11229.

13.  Othera Occupational Therapy PC ("Othera") was a New York state corporation that operated at 4111 18th Avenue, Brooklyn, New York 11218.

3

14.     North Flatbush Medical PC ("North Flatbush") was a New York State corporation that operated at 1353 Utica Avenue, Brooklyn, New York 11203.

15.     Great Health Occupational Therapy PC ("Great Health") was a New York state corporation that operated at several locations, including 4111 18th Avenue, Brooklyn, New York 11218 and 3001 Brighton 1st Street, Brooklyn, New York 11235.

16.     Fast Track Occupational Therapy PC ("Fast Track") was a New York state corporation that operated at several locations, including 2792 Ocean Avenue, Brooklyn, New York 11229.

17.     Total Rehab, Evercare, Mission Rehab, Othera, North Flatbush, Great Health, and Fast Track (collectively, the "Scheme Medical Clinics") each purported to provide, among other things, medically necessary occupational therapy and related medical services to Medicare and Medicaid beneficiaries.

18.     The defendant ANNA NEKHANEVICH, also known as "Anna Silver" and "Anna Serebryany," was an occupational therapist licensed to practice occupational therapy in New York.  NEKHANEVICH was the president of Great Health and Fast Track and was enrolled in the Medicare and Medicaid programs.

II.     The Health Care Fraud Scheme

19.     From approximately March 2010 until May 2015, the defendant ANNA NEKHANEVICH, also known as "Anna Silver" and "Anna Serebryany," together with others, executed and attempted to execute a fraudulent scheme at the Scheme Medical Clinics.  Specifically, NEKHANEVICH and others:  (a) artificially and corruptly increased demand for medical services by providing Medicare and Medicaid beneficiaries with cash payments per visit to induce those beneficiaries to subject themselves to medically

4

unnecessary procedures, services and tests; (b) submitted and caused to be submitted claims to Medicare and Medicaid for occupational therapy services that were not medically necessary, not provided and otherwise did not qualify for reimbursement by Medicare and Medicaid; and (c) engaged in deceptive acts and contrivances intended to hide information, mislead, avoid suspicion and avert further inquiry into the nature of the services offered at the Scheme Medical Clinics.

      20.     The defendant ANNA NEKHANEVICH, also known as "Anna Silver" and "Anna Serebryany," together with others, submitted and caused to be submitted to Medicare and Medicaid false and fraudulent claims for occupational therapy services that were not medically necessary and were not provided.  For example:

      (a)     False and fraudulent claims for occupational therapy services that were knowingly induced by the payment of cash kickbacks to Medicare and Medicaid beneficiaries who attended the Scheme Medical Clinics were submitted to Medicare and Medicaid.  Under Medicare and Medicaid, occupational therapy services are not reimbursable if they have been induced by kickbacks to patients;

      (b)     False and fraudulent claims for occupational therapy services were submitted on behalf of the same patients at the Scheme Medical Clinics for months and sometimes years at a time.  This extended occupational therapy was not medically necessary to treat chronic conditions and was not actually provided;

      (c)     False and fraudulent claims for occupational therapy services were submitted for procedures at the Scheme Medical Clinics that were often administered by aides who were neither licensed nor authorized by law to provide occupational therapy. Under Medicare and Medicaid, occupational therapy services are only reimbursable if they

5

are performed by a licensed therapist, or a licensed therapy assistant directly supervised by a licensed therapist; and

           (d)     False and fraudulent claims for occupational therapy were submitted for services at the Scheme Medical Clinics that were not actually rendered. For example, NEKHANEVICH, submitted and caused to be submitted claims for services purportedly rendered on days when she was outside of the country and thus incapable of actually providing those services. On other occasions, NEKHANEVICH and others submitted and caused to be submitted claims indicating, through the use of CPT codes, that certain procedures had been performed when, actually, NEKHANEVICH and others performed different kinds of procedures or did not perform the procedures at all.

          21.     To conceal the fraudulent scheme, the defendant ANNA NEKAHENVICH, also known as "Anna Silver" and "Anna Serebryany," together with others, made false entries in patient medical files concerning the nature of the services provided, the medical necessity of those services, and the identity of the rendering provider of those services. On many occasions, NEKAHENVICH came to the Scheme Medical Clinics to sign patient charts and medical billing documents falsely indicating that she had supervised and performed therapy services that she had not actually performed. NEKAHENVICH also recruited other therapists to come to the Scheme Medical Clinics to falsely sign patient charts and medical billing documents. NEKHANEVICH and others also fabricated patient charts and medical billing documents in order to conceal the scheme from law enforcement and from Medicare and Medicaid auditors.

          22.     Between approximately March 2010 and May 2015, the defendant ANNA NEKAHENVICH, also known as "Anna Silver" and "Anna Serebryany," submitted

6

and caused to be submitted approximately $3.3 million in claims to Medicare and
approximately $2.6 million in claims to Medicaid.

III.   The Money Laundering

      23.   Between approximately January 2013 and May 2015, the defendant
ANNA NEKAHENVICH, also known as "Anna Silver" and "Anna Serebryany," controlled
bank accounts in the name of Great Health and Fast Track.  These accounts each received
payments from Medicare and Medicaid that were based on claims generated at the Scheme
Medical Clinics.

      24.   Upon receiving payments from Medicare and Medicaid into the
accounts for Great Health and Fast Track, the defendant ANNA NEKHANEVICH, also
known as "Anna Silver" and "Anna Serebryany," transferred substantial portions of the
money by means of checks made payable to companies purportedly in the business of
providing management, consulting, advertising, marketing, medical support and other
commercial services (the "Kickback Companies").  In reality, these companies provided only
superficial professional support services and were primarily in the business of generating
cash that could be used to pay kickbacks to patients who were referred to NEKHANEVICH
and others at the Scheme Medical Clinics for services that would later be paid for in whole
and in part by Medicare and Medicaid.  In order to conceal from the government and others
the illicit nature of his relationship with the Kickback Companies, NEKHANEVICH caused
the Kickback Companies to prepare and submit invoices falsely indicating that the payments
were fees for management and other legitimate business services, when, in fact, as
NEKHANEVICH well knew and believed, the payments were primarily for the purpose of
patient referrals.

IV.    The False and Fraudulent Tax Return

25.    During the calendar year 2013, the defendant ANNA

NEKHANEVICH, also known as "Anna Silver" and "Anna Serebryany," falsely

characterized the payments to the Kickback Companies as legitimate business expenditures

when, as NEKHANEVICH well knew and believed, these payments were, in fact, illegal

kickbacks whose primary purpose was to secure patient referrals.  Because Great Health was

a Subchapter S Corporation as defined by the Internal Revenue Code, NEKHANEVICH, by

falsely representing the payments to the Kickback Companies as legitimate business

expenses, caused the 2013 Form 1120S United States Income Tax Return for an S

corporation for Great Health to underreport business income, and subsequently underreport

taxable income on NEKHANEVICH's 2013 Form 1040 United States Individual Income

Tax Return.

COUNT ONE
(Health Care Fraud)

26.    The allegations contained in paragraphs one through twenty-five are

realleged and incorporated as if fully set forth in this paragraph.

27.    In or about and between March 2010 and May 2015, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant ANNA NEKHEVICH, also known as "Anna Silver" and "Anna Serebryany,"

together with others, did knowingly and willfully execute and attempt to execute a scheme

and artifice to defraud Medicare and Medicaid, health care benefit programs, and to obtain,

by means of materially false and fraudulent pretenses, representations and promises, to wit:

claims for occupational therapy services at the Scheme Medical Clinics that were not

8

rendered, not medically necessary, and not otherwise reimbursable, money and property owned by, and under the custody and control of, Medicare and Medicaid, in connection with the delivery of and payment for health care benefits, items and services.

(Title 18, United States Code, Sections 2, 1347 and 3551 et seq.)

## COUNT TWO
### (Money Laundering)

28.     The allegations set forth in paragraphs one through twenty-five are realleged and incorporated as if fully set forth in this paragraph

29.     In or about and between January 2013 and May 2015, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANNA NEKHANEVICH, also known as "Anna Silver" and "Anna Serebryany," together with others, did knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, specifically, deposits, withdrawals and transfers of funds and monetary instruments, which transactions involved the proceeds of specified unlawful activity, specifically, health care fraud in violation of Title 18, United States Code, Section 1347, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity and knowing that such financial transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity.

(Title 18, United States Code, Sections 2, 1956(a)(1)(B)(i) and 3551 et seq.)

9

## COUNT THREE
### (Subscribing to a False and Fraudulent Tax Return)

30.     The allegations set forth in paragraphs one through twenty-five are realleged and incorporated as if fully set forth in this paragraph.

31.   On or about April 15, 2014, within the Eastern District of New York, the defendant ANNA NEKHANEVICH, also known as "Anna Silver" and "Anna Serebryany," did knowingly and willfully make and subscribe a United States Personal Income Tax Return, IRS Form 1040, for the calendar year 2013, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, and which NEKHANEVICH did not believe to be true and correct as to ever material matter in that, as the defendant NEKHANEVICH then and there well knew and believed, the tax return falsely underreported income by approximately $191,000.

(Title 18, United States Code, Sections 3551 et seq.; Title 26, United States Code, Section 7206(1))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

32.     The United States hereby gives notice to the defendant that, upon conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of such offense to forfeit any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offense.

33.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

10

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code Section 982(a)(7) and Title 21, United States

Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWO

34.     The United States hereby gives notice to the defendant that, upon

conviction of the offense charged in Count Two, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982(a)(1), which requires any person

convicted of such offense to forfeit any property, real or personal, involved in such offense,

or any property traceable to such property.

35.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendant:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

11

(e)      has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)(1); Title 21, United States Code,

Section 853(p))


KELLY T. CURRIE
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


ANDREW WEISSMANN
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

12